IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                          Docket No.: 97-25 (PG)

MANUEL L. GOMEZ-GONZALEZ,

Defendant.
_____/

**DEFENDANT'S REQUEST FOR
A NUNC PRO TUNC DESIGNATION**

COMES NOW Defendant, Manuel L. Gomez-Gonzalez, pursuant to this Motion Requesting a Nun Pro Tunc Designation and in support provides as follows:

1. On May 10, 1997 Defendant was arrested and charged with possession with intent to distribute cocaine in violation of Title 18 U.S.C. § 841(a)(1) and Title 18 U.S.C. § 2.[1] (D.E. 1) (Eastern District of New York)

2. Subsequently, on January 16, 1998, Defendant pled guilty and was sentenced to 70 months incarceration along with 5 years supervised release. (D.E. 58) (Eastern District of New York)

---

[1] Petitioner was originally arrested in the Eastern District of New York (Brooklyn) under Docket No.: 1:97-CR-00516-RR-2.

3. On October 16, 1998 Defendant was charged in a three count indictment in the District Court of Puerto Rico in a *related* overt act, charging that on February 11, 1997 the Defendant knowingly and intentionally conspired and agreed other to import cocaine in violation of Title 21 U.S.C. § 963; Title 21 U.S.C. § 841; and Title 21 U.S.C. § 846. (D.E. 158) (District of Puerto Rico)[2]

4. On October 25, 1999 Defendant pled guilty to Count I as charged in the District of Puerto Rico as a result of a plea agreement reached between the Defendant and the United States Government. (D.E. 285) (District of Puerto Rico)

5. The plea agreement specifically recommended that Defendant's sentence should begin to run from the date that he came into custody of the United States. Furthermore, the Government agreed to move for the dismissal of Count II.

6. During the change of plea hearing this Court verified among other things that Petitioner's sentence should begin to run from the date that he entered the United States. The Government verified this date to be May 10, 1997. *Id.* Appendix A, Change of Plea, p. 11 ¶'s 2-25.

7. On February 25, 2000 Defendant was sentenced to 144 months incarceration to be served concurrent with the sentence imposed in the United States District Court for the Eastern District of New York. A supervised release of 15 years was

---

[2] The charged offense in the District of Puerto Rico was related to the original charged offense in the Eastern District of New York.

imposed and Counts II, III, and IV were dismissed as per the Government's request. (D.E. 332) (District of Puerto Rico)

8. The Judgment and Commitment Order from this Court specifically clarified that the "Defendant is to be given credit for any time incarcerated in relation to this case. The date of the arrest was May 10, 1997." *Id.* J & C Order p. 2.

9. Defendant did not appeal either case.

10. Although this Court's judgment was explicitly clear in stating that Defendant's date of arrest is May 10, 1997 and that he should be given proper credit from May 10, 1997 onward, the Federal Bureau of Prisons has failed to credit Defendant the allotted jail credit time.[3]

11. In essence, this Court's original intentions were that Defendant receives jail credit from his original date of arrest on May 10, 1997 which the Federal Bureau of Prisons refuses to follow.

---

[3] In essence the Federal Bureau of Prisons is calculating the Defendant's sentence as follows: May 10, 1997, the date of arrest in the State of New York case, through January 16, 1998, the date of sentencing in the State of New York case. The BOP considers that one sentence. Then, from February 25, 2000, the date of sentencing in the Puerto Rico case forward, the Federal Bureau of Prisons considers that the second sentence. The lapsed time between January 16, 1998 and February 25, 2000 a total of 25 months, the Federal Bureau of Prisons is refusing to apply the proper jail credit to Defendant.

## CITATION OF AUTHORITIES

**I. DEFENDANT PROVIDES THAT A NUN PRO TUNC DESIGNATION IS REQUIRED IN ORDER FOR THIS COURT TO CLARIFY ITS ORIGINAL INTENTIONS THAT PETITIONER RECEIVE JAIL CREDIT FROM MAY 10, 1997 ONWARD AS PRESENTED IN THE JUDGMENT AND COMMITMENT ORDER OF HIS SENTENCING**

As previously mentioned, Defendant was arrested on May 10, 1997 and charged with conspiracy to distribute cocaine in the District of New York. He was ultimately sentenced to 70 months incarceration. Subsequently, Defendant was recharged on overt acts resulting from the same charged offense as the State of New York in the District of Puerto Rico. Ultimately on February 25, 2000 Defendant was sentenced to 144 months incarceration. This Court specifically stated in its judgment and commitment order that the date of Defendant's arrest was May 10, 1997 and clarified during the change of plea colloquy that Defendant's jail credit should begin from May 10, 1997. *Id.* The U.S. Attorney's Office clarified this date and had no objections to the calculations of the jail credit sentence.

Defendant attempted to resolve the matter by contacting the Federal Bureau of Prisons without the assistance of counsel to no avail. Although, the Federal Bureau of Prisons has taken the position that their Policy Statement prohibit them from giving Defendant the proper credit absent a nun pro tunc designation from this Court, what the Federal Bureau of Prisons has failed to address is that when

this Honorable Court sentenced Defendant in the underlined criminal matter on February 25, 2000 it explicitly entered in its judgment order that Defendant's jail credit should begin from May 10, 1997.

In essence, the Federal Bureau of Prisons has taken the position that since the original judgment from the State of New York does not clarify whether the subsequent judgment to be entered in the State of Puerto Rico should be served concurrent to the State of New York judgment, nor does not clarify the jail credit to be imposed to the State of Puerto Rico sentence, that the proper jail credit between January 16, 1998 and February 25, 2000 should not apply to either case. This procedure is discouraged as a matter of law. *See United States v. Eastman*, 758 F.2d 1315, 1318 (9th Cir. 1995) (allowing a federal judge to sentence a defendant consecutively to a yet imposed state sentence would prevent the right to the state to apply its own laws of sentencing for violations of state criminal laws). *Id.* at 1318 emphasis added.

When the State of New York sentenced Defendant it imposed a sentence that was deemed proper after reviewing and exercising the Court's judgment as guidance. The State of New York determined that the sentence to be served of 70 months was an appropriate sentence to be imposed for the federal violations as charged in the indictment. Subsequently when this Court reviewed the State of New York's judgment and entered an appropriate sentence in the instant matter,

this Court sentence the Defendant to a term of incarceration of 144 months. This calculation took into consideration the jail credit to be imposed as a result of the state sentence which began on May 10, 1997. ***Should the Federal Bureau of Prisons' current sentence calculation not be corrected it would have the same effect as having the Court sentence the Defendant to 169 months.***

The Court in *United States v. Clayton*, 927 F.2d 491, 493 (9th Cir. 1991) and *United States v. Eastman*, 758 F.2d 1315, 1317 (9th Cir. 1997) clearly state that the rules of comity would be violated if one court would be allowed to impose in the jurisdiction of another court. Comity signifies "a proper respect for state functions" *Id. Younger v. Harms*, 401 US 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

In sum, should the Bureau of Prisons' interpretation of the judgment order as determined by them, in essence, that if they should disregard this Court's judgment that the jail credit should begin from May 10, 1997 since this Court did not clarify nun pro tunc in its judgment and commitment order, the B.O.P. will interfere with this Court's prerogative to exercise its sentencing discretion. In essence, this Court's judgment binds the Bureau of Prisons on executed judgments as imposed. *See Eastman*, 758 F.2d 1308, 1318 (such difficulties arises from dual summary binds the sentencing discretion of the other). *Id. Clayton*, 927 F.2d at 493.

6

Regardless of the intentions of the Federal Court in New York, when this Court sentenced the Defendant as a result of the plea agreement that was reached between Defendant and the Government, this Court agreed that Defendant's jail credit should begin from May 10, 1997 onward. Just because this Court's judgment does not clarify that the order should be treated nun pro tunc should the release the Federal Bureau of Prisons be released from their obligation to follow this Court's judgment as entered.

Finally, a nun pro tunc designation directing the Federal Bureau of Prisons to allow both sentences to be served concurrent with the jail credit beginning on May 10, 1997 as requested originally by this Court will allow Defendant Gomez-Gonzalez to receive the benefit of the 25 month incarceration that he has already served in accordance with the judgment entered by this Court and in accordance with the terms of the agreement reached between the Defendant and the U.S. Attorneys' Office.

## **CONCLUSION**

WHEREFORE, Defendant respectfully prays that this Honorable Court enter a nun pro tunc designation directing the Federal Bureau of Prisons calculate the 25 months of incarceration that was served by the Defendant in this case as jail credit towards the federal sentence that he is currently serving in accordance with this Court's judgment entered in the above matter.

In the alternate, Defendant respectfully prays that this Honorable Court enter a nun pro tunc order designating that the original intentions of the judgment entered in the instant matter was that Defendant's sentence be calculated from May 10, 1997 as agreed upon by all the parties involved.

Done this 17 day of March 2005

> I hereby do certify that pursuant to Penalty of Perjury Title 28 U.S.C. § 1746 that on this 17 day of March 2005 I signed and mailed this document via the Federal Bureau of Prisons' Legal Mail System.
>
> _____
> Manuel L. Gomez-Gonzalez, *pro-se*
> Sandstone FCI
> Reg. 53446-053
> P.O. Box 1000
> Sandstone, MN 55072

## CERTIFICATE OF SERVICE

I HEREBY DO CERTIFY that a true and correct copy of this Request for a Nun Pro Tunc Designation was mailed to: A.U.S.A. Carlos Martinez, U.S. Attorneys' Office, Torre Chardon, Suite 1201, 350 Carlos Chardon Avenue, San Juan, Puerto Rico 00918 by placing the same in the FCI Sandstone Legal Mail Box with sufficient First Class Postage.

Done this 17 day of March 2005

I hereby do certify that pursuant to Penalty of Perjury Title 28 U.S.C. § 1746 that on this 17 day of March 2005 I signed and mailed this document via the Federal Bureau of Prisons' Legal Mail System.

_____
Manuel L. Gomez-Gonzalez, *pro-se*
Sandstone FCI
Reg. 53446-053
P.O. Box 1000
Sandstone, MN 55072

9